Good morning, Your Honors. I represent Mr. Ma, and his last name is Ma. I represent Mr. Ma. And your name? My name is Jean Wang. The issue before this court is a very specific issue, which is whether 8 CFR 274A12B, this particular regulation's grant of authority to continue employment, includes lawful immigration status. This is a very important issue for all of the people that come under this statute, which is all the work-based visa noncitizens. I didn't draft the briefs, but so I'd like to add some points that aren't mentioned in the briefs. Well, you're supposed to include all your arguments in your briefs. Yes, yes. They're mentioned but not elaborated on as I would had I drafted it. But so I'd like to address it. The government tries to expand this case beyond what this case is by saying that all employment authorization would mean status for everyone, which is not this case. The issue here is this specific statute, which is very specific to work-based visa noncitizens. So the argument I found most persuasive of the government's is that another regulation, 8 CFR 1245.1, defines lawful immigration status as exclusively limited to six categories, which does include work authorization under 274A.12B20. And so, therefore, at least one of their theories is so long as the regulation is valid and it's been upheld by other circuits, that would exclude your argument. That's not true, because if you look at the statute, the definition of lawful immigration status under subsection 2 of that statute, it says an alien admitted to the U.S. in nonimmigrant status as defined in Section 101A.15 of the Act, whose initial period of admission has not expired or whose nonimmigrant status has been extended in accordance with Part 214 of 8 CFR Chapter I. And according to that chapter, specifically 8 CFR 214.1 subsection E, it states any, a nonimmigrant in the U.S. that has any, has filed, has authorized employment. So it specifically refers to those that are authorized for employment. Now, you've just, you've sort of lost me there a little bit. Sorry. Let's go back and answer. When you said the statute, which provision are you talking about? Are you talking about 8 U.S.C., or are you talking about the regulations? No, I'm talking about the definition. Well, I was addressing Your Honor's reference to that, to the definition of lawful immigration status. That's in 8 CFR 1245.1? Right, subsection 2. Little to an alien admitted to the United States? Yes, double I. Okay. Right, it refers to Part 214 of 8 CFR Chapter I. Do you see that there? Yes. Okay. And so that specific, that chapter is large, so within that chapter is 8 CFR subsection, sorry, 8 CFR 214.1E, which specifically talks about employment. And so I'm looking now at 8 CFR 1245.1D1, little to I, and may include whose initial period of admission has not expired or whose non-immigrant status has been extended in accordance with Part, basically 8 CFR Part 214. And you're saying that that includes 274A12B20, or what are you saying? Help me with that. Yes, I'm saying that includes 8 CFR 214.1E. And so how does that help you? Which provides for employment. Right. But does it cover what your client got, which is work authorization, the automatic work authorization under 274A.12E20? Yes, because it specifically deals with work authorization for those with extended visa applications. Okay. But that particular section has to do with an automatic extension. So is that specifically referenced? See, the extension is not necessarily automatic. It has to be a timely file. It doesn't just my question is, is that referenced in 8 CFR Part 214.1E? Right. That reference is to employment. Well, I'm sure there's a lot about employment, but the specific provision that your client is relying on is 274A.12B20. So my question to you is, what's the connection between 8 CFR Part 214 and that section you're relying on? The connection is that the employment, the definition of lawful immigration status that you had started off with, right, refers to meaning anyone, this type of person can have lawful immigration status, which is double I. Someone that has an extended visa. So as defined by 8 CFR Part 214. So you go to 8 CFR Part 214, and this 214.1E specifically deals with those with employment and specifically states any other nonimmigrant in the U.S. may not engage in any employment unless he has been accorded a nonimmigrant classification, which authorizes employment. And so the subject regulation here provides for that authorized employment for someone that has specifically an extended visa application pending. And so that is the link between these two. Well, the link between the lawful immigration status, the lawful immigration status on one side, and then this subject regulation, the link is 8 CFR 214.1E. Do you have a case by a court in line with your provision, or are you just saying this is common sense in our own interpretation? No, Your Honor. What you're deciding today is precedential. Okay. No case of any kind of court. Well, the key case that Petitioner Mr. Ma relies on is the El-Bajari case. I'm probably pronouncing it wrong. So let me ask you a question. You started off by saying you wanted to add some argument, or you wanted to? Tone. You wanted to refine the argument in the brief. You know, the case was confusing to me when I read the brief. Actually, I read your brief twice. Another? Well, I mean, I read the appellant's brief twice because it's confusing. You know, we don't deal with this stuff every day, and it doesn't come sort of like a natural. You know, you've got to work with it, right? Right. And when I look at your brief, I don't even see CFR 2, what is it, 8 CFR 214. I apologize, Your Honor. I'm not the drafter of the brief. This isn't even. I was substituted in. I didn't. I agree. I really, you know, your arguments need to be in the brief because then I wasted my whole entire time. Yeah. I completely agree with you, and I apologize for my predecessor's brief that it's not more. Well, I'm not so sure your predecessor's brief was not, you know, thorough and complete and a good brief. So I want to make it up here in oral argument and explain, and I can submit another 28-J afterwards. That's not how 28-Js work. Right, before, yes. If your client loses here, does he have any other recourse? No. He already has a deportation order. He already has a removal order. My client is a highly talented. No question about that. High-skilled data scientist. I didn't even know they existed, and he exists, and he had a lot of options available to him. He could have applied for asylum. His parents are political dissidents from China that have been granted asylum, both of them. And he could have continued his studies at San Diego State University. He had an offer to go to graduate school there. So he has an MBA. He has a BA. He has eight-plus years of experience in the field. He had a lot of options for him. If I represented him earlier, I would have done more, but he's not one of the people that the president wants to remove. He is far from that type of person. There is a technicality here, and we're talking about a difference of six days. I mean, why this issue is important is because he filed his adjustment of — well, his employer filed an adjustment of status application for him to get a green card. But that was filed beyond 180 days. He's allowed 180 days of unlawful presence. So it was filed beyond 180 days. And the key why it's — whether or not it's beyond or under, we're saying it's 174 days. So the difference, whether it's past 180 or actually 174 days, is based on this statute, whether or not this statute gave him lawful immigration status. And so that's the crux of why we're arguing this statute. And the — so we're just arguing for that six days. So we were talking about calculations in the prior case. We're just arguing for six days. And it comes down to this statute. This statute is — if he was authorized to work and if he was allowed to be in the United States during that period, then he would have 174 days only of unlawful presence. And thus, he would be able to adjust status. And so USCIS had denied his employment adjustment of status because of this calculation. That's why. Do you want to save some time for rebuttal? Yes, I do. Okay. Let's hear from the government. Thank you, Your Honor. May it please the Court. Robert Tennyson for the government. It's one of those basic fundamental properties of an immigration law system that's based upon the government granting benefits to come into the country and stay in the country for non-nationals, that an individual can't grant themselves status. And yet that's what the Petitioner here is asking us to do. He's saying, merely because I filed an application to extend my H-1B status, to extend the period of authorized stay, and I get the employment authorization, I automatically get lawful status in the United States. That can't be right. The Petitioner says that somehow the employment authorization provision in this case, that the grant of employment authorization somehow creates that lawful status. But if you look at 1255K, that can't be right as well. 1255K, I believe it is, what, I believe it is 2, subsection 2, right? It would be, has two, actually has three criteria that you can't be out of for more than 180 days. One of them is lawful status. So you can't have more than 180 days of lawful status. You also can't have more than 180 days of unauthorized employment. It seems peculiar that you would have to satisfy both of those criteria. And you could satisfy one by getting employment authorization, and that counts to get over your unauthorized employment period. But then you also can use that to get rid of the requirement that you must be in lawful status or must not be outside of lawful status for more than 180 days. Second, there is also a positive definition of lawful immigration status. As you pointed out, Judge Aikuda. And that has a list of under 245, 8 CFR, 245.1D1, six things, right? An individual is in lawful immigration status if, one, they're a lawful permanent resident, two, they're a nonimmigrant within their authorized period of stay or an extension of that period of stay. So her argument is that the definition in D2 and its reference to whose nonimmigrant status has been extended in accordance with Part 214 of 8 CFR Chapter 1 includes what the immigrant has, what Mr. Ma has done here. She referenced 8 CFR 214.1E, I think. Right. Is that incorrect? That is correct. And so let me look at that. And so let me respond to that. I mean, that subsection, E, specifically refers to employment, right? And then there is specific language here that any other nonimmigrant in the United States may not engage in any employment unless he has been accorded nonimmigrant classification, which authorizes employment, or he has been granted permission to engage in employment, which would mean outside of some status, right? So he's either here with status or, for example, an individual who has applied for adjustment of status or who has applied for asylum, an individual who has applied for some benefit. The government has allowed them for various, I guess, for purposes of we don't want people being without employment, going destitute, while they are seeking benefits, that we allow some individuals to work, even though they don't have status. So what this provision is talking about, it isn't a status granting provision. The status granting provisions are in H.C.F.R. 214.2 and other provisions, for example, the ones with T visas and U visas later on in that provision. But the one provision is purely about who gets employment. It's not about lawful status. So that reference back in 245, it's an individual who has been extended a status under those provisions. And not every single provision is going to be a status granting provision. Now, the third thing is, if we can go back and look at their specific statute that they talked about in their brief, and that is H.C.F.R. 274A.12B20. One of the things you want to look at when you look at that, if you look at that provision, Sections 1 through 19 do something very clear. They say, if you have status, if you've been granted status under this provision over here in 214 for a certain visa, then you get a — then you're authorized to work for this person, a particular, you know, this particular class of employer or this particular employer. And 1 through 19 looks explicitly like that. What 20 does is that it says, if you were in status, so again, it says there's a — you were in status, if that, and you've applied to extend your period of authorized stay, then you get employment authorization. It doesn't say that by getting that employment authorization, you get lawful status. And, in fact, if you look specifically at 20, at subsection 20 itself, it authorizes the employment, the period of employment authorization beginning on the date of the expiration of the period of authorized stay. Your period of authorized stay is over, and yet you're allowed to continue working. And the reason why you have this is because imagine we didn't have this subsection. You would have people who had applied to extend their status, perfectly permissive, and who received their status. USCIS adjudicates it and says, you now have the status, but for whom there is a period between the time they applied and the time it was granted, retroactively back to the time, back to the period that their authorized stay ended, who couldn't have worked. So USCIS, so the government had to make a choice, and that was to allow individuals who were going to get the status, who would subsequently get their extensions, not to work in the period during which they had the application, so that the people who would not get their applications approved wouldn't work, or alternatively to let the people who did not have — who were not going to get the benefit, whose extensions were going to be denied, allow them to work so that the people who could ultimately get their extensions granted could work during the period. Did he file a timely application here for lawful status? He filed an — his application for adjustment of status, and that is the — this is the H-1B you're asking about, or is it the lawful permanent status application? Both of the — Okay. They're different. All right. The H-1B was filed — for the extension was filed on time. It was filed about, let's see, 7 — about 11 days before his H-1B status expired. He could have filed it earlier. His adjustment application was filed when he was no longer in lawful immigrant status, and there's no — and there's no question about that. The first one was. The first one was filed, and that's the reason why he has the benefit of D-20, because he filed it before the period of authorized stay expired. Was the government slow in reacting to the application? The government has up to — there's a 240-day period of work authorization here. I don't think the government was slow in not adjudicating it within the 11 days before it expired. So that — that really didn't matter. One thing that the Petitioner could have done, he could have brought himself into the 180 days. He had a labor certification that he had filed in that December and that was granted on January — I believe it was January the 2nd. That was a point. January 3rd of 2007. That's the reason I asked the question. I wondered if he could have taken some action during the interim. He could have taken — yes. He had the labor certification, and then he waited between — from January 3rd all the way until he finally filed his application on July 2nd to file the I-140 and I-485. If he had filed it then, back on January 3rd, we wouldn't be here today, because he would be within the 180 days. Does he have any alternative now? His counsel says no. He can — he can attempt a consular process if he is removed. He can certainly attempt to seek a waiver of his time outside the country and a consular process to return to the country. But this is one of those unfortunate situations in which the rules are set up such that — and we do not dispute that he has a fantastic background — that he is going to have to try and return to the country from abroad if this is — if the court denies his petition for review. If the court has no further questions, the government rests. Do you have any case? He says he doesn't have any cases on the other side, so you don't have any case? Oh, on our side, there's a Fifth Circuit case that supports the government's position in this case. We identified it in the brief. It's Bakhari. Yeah. But beyond that — all right. Thank you. Okay. Your Honor, to address your question, we do have the case El-Badrari v. Department of Homeland Security, 579F sub 2D204, which we heavily rely on. And because the Court deals with the same issue and goes and elaborates on why, for so many reasons, the — this statute, this particular statute does include immigration status for this specific type of people. And regarding the filing of the — filing of the employment-based adjustment of status application, my client, contrary to what the government just told you, my client has no control over that. It's an employer-based, and so his employer files these applications for him. And so he has no control over the date, just like his employer filed the H-1B extension. Employers are not allowed to file H-1B extensions beyond six months, so they have to wait until six months before their employee expires to file an extension. They can't file earlier to avoid a gap. So they're — they're also — their hands are tied because of that, and that's — that's based on the statute is — that's statutory, that they have to wait six months. And so there's definitely going to be a gap for all of these H-1B employees that need extensions because they can't file earlier. And with the President's extreme vetting and the delays going on with USCIS, that's why with so many regulations, there's so much — there's so much tolling. There's — and there's — regarding a failure for technical reasons because of the government's delay. And this is all not in the noncitizen's control. Mr. Ma has no control, and he has no notice. There's a — there's a serious due process violation here. The government wants to — with these — what I filed a 28-J letter about was the pamphlet produced by the government as to what people in Mr. Ma's situation should do. Should they stay or should they go? And they have no notice as to whether or not they should stay or go. And they — and they can't — they can't go, they can't stay. If they go, he risks abandoning his extension application. The government may deny his H-1B extension because he departed, treating that as an abandonment. He would have a very hard time returning. If his visa had expired, he would have to go get a new visa. Over your time. I'm over my time, Your Honor? Yes. Okay. I thank Your Honors. And lastly, I'd like to say I'm just honored to be here in front of the Ninth Circuit Court of Appeals. Thank you. And we appreciate your arguments on both sides. The matter is submitted at this time.
judges: Siler, Paez, Ikuta